1  KILPATRICK TOWNSEND & STOCKTON LLP
   EMIL W. HERICH (Bar No. 116783)
2  *eherich@kilpatricktownsend.com*
3  1801 Century Park East, Suite 2300
   Los Angeles, California 90067
4  Telephone:  (310) 248-3830
   Facsimile:   (310) 860-0363
5

6  Attorneys for Plaintiff
7  Richard A. Westin

8              **UNITED STATES DISTRICT COURT**

9       **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10

11  RICHARD A WESTIN, an individual,        CASE NO.: 3:22-cv-5984

12              Plaintiff,

13         v.                               **COMPLAINT FOR:**

14  CAPITAL BENEFIT, INC., a                1) **Fraud and Concealment;**
    California Corporation; and MARCEL      2) **Negligent Misrepresentation;**
15  BRUETSCH, an individual                 3) **Breach of Contract;**
                                            4) **Breach of Fiduciary Duty;**
16              Defendants.                 5) **Unfair Competition;**
                                            6) **Negligence;**
17                                          7) **Equitable Indemnity;**
                                            8) **Violation of California Penal**
18                                             **Code Section 496 (c); and**
                                            9) **Declaratory Judgment**
19

20                                          **DEMAND FOR JURY TRIAL**

21

22

23

24

25

26

27

28

Plaintiff Richard A. Westin ("Plaintiff" or "Westin") hereby alleges as follows:

## JURISDICTION

1.    Plaintiff is, and at all times herein mentioned was, an individual residing in and a citizen initially of Kentucky and then of the State of Maine. Defendant Capital Benefit, Inc. ("CBI") is, and at all times herein mentioned was, a corporation organized and existing under the laws of the State of California with its principal place of business located in Newport Beach, Orange County, California. Defendant Marcel Bruetsch ("Bruetsch") is, and at all times herein mentioned was, an individual residing in and a citizen of the State of California.  Plaintiff is a citizen of Kentucky/Maine and CBI and Bruetsch (collectively "Defendants") are both citizens of the State of California.  This Court, thus, has subject matter jurisdiction under 28 U.S.C. § 1332, in that this is a civil action between citizens of different states in which the matter in controversy exceeds, exclusive of interest and costs, seventy five thousand dollars ($75,000.00).  This Court has personal jurisdiction over both Defendants because they now do, and at all relevant times have done, business in the Northern District of California (Oakland) and the loan and judgment which are the subject this action were negotiated and/or entered in said judicial district.

## DIVISIONAL ASSIGNMENT

2.    Venue is proper in this Court because Defendants do business in the Northern District of California (Oakland), the loan transaction which is the subject of this action was entered into the Northern District of California and this action arises from and is related to an action entitled *Drakeford, et al v. Capital Benefit, Inc., et al*, United States Northern District of California case No. 20-cv-04161 litigated in this judicial district.  Moreover, pursuant to L.R. 3-2 (d), all actions that arise in Alameda county are to be assigned to the San Francisco or Oakland division of this court.

**The Parties**

3.      Westin is a 77 year old retired tax lawyer formerly living in Kentucky and presently residing in Maine.  Despite the fact that Westin was previously a tax lawyer, he has no training in lending or finance law.

4.      Breutsch is a licensed California real estate broker and is the President and designated broker for CBI.

5.      According to its web site, CBI specializes in "private money loans" and over the last 10 years CBI has financed 1 billion in the California real estate.  CBI is in the business of locating borrowers and then brokering "hard money" loans for which it typically receives a portion of the proceeds, 100% of any default interest charged to the borrowers as well as 50% of any late fees.

**Factual Background and Facts Common to All Causes of Action**

6.      Westin was introduced to Breutsch in about 2012 and initially participated in a group that financed real estate loans for business purposes at favorable interest rates.  By 2018, Westin was no longer with the group and began to invest some of his money, including retirement money, directly with CBI.  In each such instance, Westin dealt directly with Breutsch who held himself out as an expert in the area of private money lending.  Westin came to have complete trust and confidence that Bruetsch would place him in transactions that were prudent and in total compliance with all federal, state and local lending and finance laws.  While Westin had no knowledge or training in lending, he did have a general understanding that any real estate loans he made to individuals had to be made for business purposes in order to avoid the strict requirements and restrictions on consumer lending.

7.      Westin is informed and believes, and thereon alleges, that in 2018 one of CBI's "finders" located Reginald and Rhonda Drakeford ("the Drakefords").  The Drakefords owned a home commonly described as 11105 Sun Valley Drive, Oakland, California ("the Drakeford property").  Westin is further informed and

believes that the Drakefords wanted to obtain a home equity loan in the amount $290,000 and that they were directed to CBI by a finder employed by Bruetsch and/or CBI.

8.      In June or July 2018, CBI sent out a flyer to its potential lenders, including Westin, soliciting their participation in a loan to be made to the Drakefords.  The proposal/solicitation described the Drakeford property and the loan they were seeking and further stated:

> Our borrowers have owned this home since 2005.
> They have good credit and stable employment.
> The loan proceeds will be used for business capital.

Plaintiff relied on the statement in the flyer that the loan proceeds were going to be used for business purposes and he had no reason to believe it was not true.

9.      In June and July, Westin had several conversations with Bruetsch about the Drakesfords' loan transaction. Each conversation was on the telephone.  In each such conversation in which the purpose of the loan was mentioned, Bruetsch clearly stated to Westin that the Drakefords' loan was for business purposes. Nothing in any of the written or oral communications that Westin had with Bruetsch stated or implied in any manner that Bruetsch had any basis to believe the Drakefords' loan was anything other than a pure business loan.

10.      In fact, however, unbeknownst and intentionally concealed by Bruetsch and CBI from Westin was the fact that the Drakefords had signed a "Purpose of Loan" document in which they had written in by hand that loan "would be used to pay credit cards, landscaping and home improvements" which were unquestionably for personal, not business purposes.  Bruetsch knew that Westin did not have any direct communications with the Drakefords.  Bruetsch concealed and withheld the Purpose of Loan document from Westin so as to induce Westin to participate in the loan because he knew that the 77 year old retiree Westin would not participate in any loan that risked violating any lending laws.

11.     Westin executed multiple documents in connection with the Drakefords' loan including a Multi-Investor Loan Sale and Servicing Agreement ("the Loan Service Agreement") a form document drafted entirely by CBI that appointed CBI as the agent for serving the loan.  The Loan Service Agreement provided substantial benefits to CBI.  For instance, the Loan Service Agreement provided that CBI would receive a base fee consisting of a portion of monthly loan payments; that CBI would receive 50% of all late charges; that CBI would receive 50% of all prepayment penalties; and that CBI would retain 100% of any default interest collected.  A true and correct copy of the Multi-Investor Loan Sale and Servicing Agreement prepared by CBI that Westin executed is attached hereto as Exhibit "A" and is incorporated by reference herein as though set forth in full.

12.     The Loan Service Agreement which specifically appointed CBI as Westin's "sole and exclusive agent" with respect to the Drakefords' loan, contained several unconscionable boilerplate type provisions that purported to insulate CBI from liability for its wrongful conduct.  The Loan Service Agreement stated that: "[CBI] will have no liability to you for errors unless we had actual knowledge that the information in the LPDS [Lender/Purchaser Disclosure Statement] was inaccurate."  It further stated: "[w]e agree to indemnify you for any Claim we caused actually found to have merit by a court of law or arbitrator, but the exclusive limitation of our indemnity is the compensation we received when the Loan was originated, prorated by your Share."  The Loan Service Agreement further provided that "[a]s your agent in the collection of your Share of the Loan, you agree to indemnify and defend us from your Share of any expense (including attorney's fees and costs of an attorney we choose), claim, demand or judgment asserted against us related to the Loan, unless such claim, demand or judgment is adjudicated to be the result of our gross negligence or willful misconduct."  The Loan Service Agreement also included a dispute resolution provision that required any dispute between Westin and CBI to be resolved by binding arbitration under the rules of JAMS with

the parties paying their own attorney's fees and waiving any right to punitive damages.

13.    At the time that Westin entered into the Loan Service Agreement, he fully believed that the representations made to him by Bruetsch that the Drakefords' loan was made for solely business purposes was true. Westin had no direct communication with the Drakefords at any time and had no knowledge whatsoever regarding the nature of their communications with Bruetsch. Bruetsch also concealed from Westin and, prior to the commencement of the litigation discussed below, Westin had no knowledge of the Purpose for Loan document that the Drakefords had provided to Bruetsch stating that their loan "would be used to pay credit cards, landscaping and home improvements." Had Westin known of such document or that the Drakefords' loan was not entirely for business purposes, he would not have executed the Loan Services Agreement or participated in the Drakefords' loan.

14.    The Drakefords' loan closed in about July of 2018. In 2020, the Drakefords fell behind on their payments and CBI commenced a non-judicial proceeding against the Drakeford property. The Drakefords hired a lawyer who sent CBI a letter demanding rescission on the basis that the Drakefords' loan violated multiple consumer protection lending laws, including the Federal Truth in Lending Act, the Real Estate Settlement Procedures Act and the Rosenthal Fair Debt Collections Act. Without ever consulting Westin, CBI rejected the demand for rescission of the loan.

15.    After their demand for rescission was rejected, the Drakefords brought an action in the Alameda Superior Court entitled *Rhonda Drakeford et al. v. Capital Benefit, Inc. et al*, Case No. 20062841 against CBI, Breutsch, Westin and the co-lenders, Mr. and Mrs. Robert Williams, on the various consumer protection statutes referenced above and on common law theories including a breach of fiduciary duty on the part of CBI. After reviewing the complaint, CBI's lawyer, Jason E. Goldstein

("Goldstein"), sent an email to Breutch demeaning the complaint as "totally fraudulent."  Breutch sent the email to Westin urging that he agree to allow Goldstein to represent all of the defendants in the Drakefords' law suit.  Breutch told Westin that they were certain to win the "fraudulent" law suit and that any costs and expenses incurred in the defending the action would be recouped from the damages awarded them against the Drakefords.  Neither Breutsch nor Goldstein ever advised Westin that there was any possibility that he would be found personally liable on any of the claims made and that he might be exposed to an adverse judgment for hundreds of thousands of dollars in attorney's fees.  Westin, believing what he was told by Breutch, agreed to engage Goldstein as counsel without consulting with an attorney of his own.

16.     Goldstein caused the case to be removed from the Alameda Superior Court to the United States District Court for the Northern District of California.  The case was tried before the Honorable William H. Orrick to a jury in which Goldstein represented all of the defendants.  The result of the trial was a complete victory for the Drakefords.  The jury concluded that the Drakefords' loan was secured primarily for consumer purposes and that the defendants had violated the Federal Truth and Lending Act, the Real Estate Settlement Procedures Act ("RESPA") and the Rosenthal Fair Debt Collection Practices Act.  The jury found that CBI and Bruetsch breached the fiduciary duties they owed to the Drakefords.  The jury also expressly found that Bruetsch and CBI had "unclean hands."  The jury rejected all of the defendants' counter-claims against the Drakefords for damages.

17.     The defendants filed post-trial motions for judgment as a matter of law and for a new trial that were rejected by District Judge Orrick.  The Order on Post-Trial Motions and Judgment upheld the jury verdict and clearly found that Bruetsch and CBI were the culpable parties responsible for the adverse verdict.  The Order on Post-Trial Motions and Judgment stated that there was sufficient evidence for the jury to find that that the Drakesfords' loan was intended to and was secured for

primarily consumer purposes, including the information that the Drakefords wrote on the loan application documents regarding the consumer purpose of the loan (, a document that was concealed from Westin).  The Order on Post-Trial Motions and Judgment stated that the defendants had no explanation as to how anything the Drakefords did nullified the jury's finding that Breutsch and CBI breached their fiduciary duty to adequately identify and discuss the material provisions of the loan that they were providing.

18.     The Order on Post-Trial Motions and Judgment went on to describe the extensive evidence presented to the jury supporting its finding that Bruetsch and CBI engaged in a pattern or practice of non-compliance with the consumer lending laws.  District Judge Orrick in his Order on Post-Trial Motions and Judgment cited 11 bullet points of evidence of wrong doing on the part of Bruetsch and CBI including all of the following: having a practice of conducting foreclosures when borrowers were two months behind on their loans, with CBI having completed 15 of them in the prior five years; deeming all loans that they issued as exempt "business purpose loans" without undertaking any inquiry other than relying on standardized forms; and that, based on the standardized form that Breutsch and CBI used, the jury could reasonably infer "a pattern and practice" of using that form to circumvent consumer protection laws like RESPA.

19.     The Order on Post-Trial Motions and Judgment went on to find that the jury could properly conclude that Bruetsch's use of "finders" as intermediaries for his "business purpose loans" constituted a "pattern or practice" of circumventing consumer protection laws like RESPA.  After affirming that the jury properly found that Breutsch and CBI breached their fiduciary duties to the Drakefords, and that "deliberately fraudulent conduct by a broker would justify depriving her of a commission for breaching her fiduciary duty of disclosure" so as to affirm the jury's award of damages against them, District Judge Orrick turned to the Drakefords' Unfair Competition Law claims which were to be decided by the court.

20.     The Order on Post-Trial Motions and Judgment went on to hold that the defendants were liable to the Drakefords on their UCL claims.  The Order on Post-Trial Motions and Judgment contained express "findings of fact" that made it clear that the wrongdoing that resulted in defendants' liability was exclusively committed by Breutsch and CBI and that Westin and the Williams were only liable vicariously liable.  Specifically, the District Court found:

> With respect to the origination of the loan, Breutsch and Capital Benefit  were the agents of the Lender Defendants (Robert V. Williams, Waltraud M. Williams, and Richard Westin), who are charged with their agents' knowledge (and/or lack thereof) regarding the actual loan purpose…. The Lender Defendants themselves had no basis for knowing the purposes of the loan except for what Breutsch communicated to them.

21.     District Judge Orrick's Order on Post-Trial Motions and Judgment went on to expressly find that Bruetsch and CBI never communicated with the Drakefords prior to originating the loan to confirm the content of the loan application that they prepared for them, to explain the loan terms to the Drakefords prior to the origination of the loan, to disclose CBI's role as mortgage broker to the Drakefords in the transaction, to disclose CBI and Bruetsch's role as agents and fiduciaries of the Drakefords in the transaction, or to disclose or explain any of the conflicts of interest implicit in the transaction, including CBI's beneficial interest in the default interest provisions of loan.  Based on these findings the District Court expressly found that "in making the loan, Bretsch and Capital Benefit committed 'unfair' business acts and practices within the meaning of the UCL because their conduct was 'immoral, unethical, oppressive, unscrupulous [and/or] substantially injurious to consumers.'"  A true and correct copy of the District Judge Orrick's Order on Post-Trial Motions and Judgment is attached hereto as Exhibit "B" and is incorporated by reference herein as though set forth in full.

22.     The District Court's Order on Post-Trial Motions and Judgment also found the Drakefords to be the prevailing party in the action and invited them to file

1   a motion for attorney's fees and costs. The District Court subsequently granted the

2   motion for attorney's fees and costs and, on September 20, 2022, entered an

3   Amended Judgment in favor of the Drakefords in the amount of $769,605.57 with

4   all of the defendants, including Westin, being "jointly and severally" liable for

5   $753,713.63 (later reduced to $738,466.12), and the remainder of $15,891.94 owed

6   jointly and severally by CBI and Breutsch only.  Subsequently, CBI and Bruetsch

7   made demand on Westin that he contribute $246,155.37 or face a claim for damages

8   far in excess of said amount.

9                                 **CLAIMS FOR RELIEF**

10                   **First Claim for Relief for Fraud and Concealment**

11                          **(Against Both Named Defendants)**

12          23.    Plaintiff repeats and repleads the allegations contained in paragraphs 1

13   through 22 above as though fully set forth herein.

14          24.    In about July 2018, Defendants solicited Westin to participate and

15   contribute to a loan to be made to Reginald and Rhonda Drakeford ("the

16   Drakefords") in the amount of $290,000.  Defendants expressly represented to

17   Westin in the written solicitation that the loan proceeds would be used for business

18   capital.  CBI and Bruetsch knew, however, that in July 2018 the Drakefords had

19   provided them with a document as part of their loan application process called

20   "Purpose of Loan" in which they had written by hand that their loan "would be used

21   to pay credit cards, landscaping and home improvements."  Defendants knew that

22   the "Purpose of Loan" document made the loan a consumer not a business loan and

23   subject to both federal and state consumer lending requirements.  Defendants also

24   knew that the loan they were soliciting Westin to participate in did not meet the

25   requirements of a consumer loan.  Defendants concealed and never disclosed the

26   existence of the Purpose of Loan document to Westin.

27          25.    The misrepresentations and concealments of materials facts were made

28   with the purposeful intention to induce Westin to both enter into the Loan Service

1  Agreement attached hereto as Exhibit "A" and to contribute $100,000 towards the

2  funding of the Drakefords' loan which he did.

3        26.    At the times that the misrepresentations and concealments expressly

4  alleged above were made, and at the time Westin entered into the Loan Service

5  Agreement with Defendants attached hereto as Exhibit "A" and contributed $100,00

6  towards funding the Drakefords' loan, Westin was ignorant of the falsity of the

7  representations made by Defendants and was totally unaware of the material facts

8  being concealed by them.  Moreover, because Westin had no direct communications

9  with the Drakefords himself, and had no knowledge about the transaction except for

10  what Bruetsch communicated to him, Westin did not discover and could not in the

11  exercise of reasonable diligence have discovered, the falsity of the representations

12  made or the existence of the facts concealed by Defendants.  Westin's reliance on

13  the misrepresentations made by Defendants was reasonable because they held

14  themselves out as specializing in private money loans and have been conducting

15  such for a number of years and Westin had no knowledge of any prior

16  misrepresentations made by them.

17        27.    Westin, in actual and justifiable reliance on the material

18  misrepresentations made by Defendants, and based on Westin's ignorance of the

19  concealed material facts, entered into the Loan Service Agreement attached hereto

20  as Exhibit "A" and performed in the manner required thereunder.  If Westin had

21  known that the falsity of the misrepresentations made by Defendants and/or the

22  existence of the facts concealed by them, Westin would have neither have entered

23  into the Loan Service Agreement nor performed thereunder.

24        28.    As a result of the foregoing fraud and intentional concealment of the

25  material facts alleged above, Westin has suffered damages in that he is jointly and

26  severally liable on a judgment owed to the Drakefords in the amount of $738,466.12

27  and he has lost the interest that he would have earned on the loan had it been made

28  for the business purposes in the manner represented to him.

29.     Defendants' acts were willful, wanton, malicious, oppressive and were undertaken with the intent to defraud and, therefore, Westin is entitled to an award of punitive damages.

### Second Claim for Relief For Negligent Misrepresentation
### (Against Both Named Defendants)

30.     Plaintiff repeats and repleads the allegations contained in paragraphs 1 through 29 above as though set forth in full herein.

31.     When Defendants made the false representations referred to above to Westin, they had no reasonable grounds for believing them to be true.

32.     Defendants made the misrepresentations referenced above with the intention of inducing Westin to act in reliance thereon by entering into the Loan Service Agreement and performing in the manner required thereunder.

33.     Westin, at the time that the misrepresentations were made by Defendants, was ignorant of the falsity of the representations and believed them to be true.  In reasonable reliance on those misrepresentations, Westin did, in fact, enter into the Loan Service Agreement and perform in the manner required thereunder.  Westin's reliance on the misrepresentations made by Defendants was reasonable because they held themselves out as specializing in private money loans and have been conducting such for a number of years and Westin had no knowledge of any prior misrepresentations made by them.

34.     As a proximate result of the negligent misrepresentations made by Defendants, Westin has been damaged in that he is jointly and severally liable on a judgment owed to the Drakefords in the amount of $738,466.12 and he has lost the interest that he would have earned on the loan had it been made for the business purposes in the manner represented to him.

### Third Claim for Relief for Breach of Contract
### (Against Defendant CBI )

35.     Plaintiff repeats and repleads the allegations contained in Paragraphs 1

1  through 34 above as though fully set forth herein.

2      36.   On or about July 24, 2018, Westin and Defendant CBI entered into the

3  Multi-Investor Loan Sale and Servicing Agreement attached hereto as Exhibit "A."

4      37.   Pursuant to the Loan Service Agreement, CBI expressly agreed as

5  follows:

6          a)  We agree to indemnify you for any Claim we caused actually found to

7              have merit by a court of law or arbitrator, but the exclusive limitation

8              of our indemnity is the compensation we received when the loan was

9              originated, prorated by your share; and

10         b)  As your agent in the collection of your Share of the Loan, you agree to

11             indemnify and defend us from your Share of any expense (including

12             attorney's fees and costs of an attorney we choose), claim, demand or

13             judgment asserted against us related to the Loan, unless such claim,

14             demand or judgment is adjudicated to be the result of our gross

15             negligence or willful misconduct.

16     38.   Express and/or implied in the Loan Service Agreement was a covenant

17 on the part of Defendant CBI that it would indemnify Westin for the consequences

18 of any wrongful acts that it committed.  While the Loan Service Agreement purports

19 to contain a limitation on CBI's liability, Westin herein alleges that such limitation

20 is, under the facts and circumstances alleged herein, unconscionable and

21 unenforceable.

22     39.   Westin performed all of his obligations under the Loan Service

23 Agreement except for those obligations he was excused from performing on account

24 of the material breaches of contract committed by CBI.

25     40.   Defendant CBI breached the Loan Service Agreement and the covenant

26 of good faith of fair dealing in the manner alleged above by refusing to indemnify

27 and hold Westin harmless from the judgment entered in favor of the Drakefords in

28 the amount of $738,466.12.

41.     As a result of CBI's breach of the Loan Service Agreement Westin has been damaged, in that he is jointly and severally liable on a judgment owed to the Drakefords in the amount of $738,466.12.

### Fourth Claim For Relief for Breach of Fiduciary Duty
### (Against Both Named Defendants)

42.     Plaintiff repeats and repleads the allegations contained in paragraphs 1 through 41 above as though set forth in full herein.

43.     The relationship between Westin and Defendants created by the Loan Service Agreement was that of principal and agent.  Moreover, Defendants were licensed California real estate brokers and performed such services for Westin. Moreover, the conduct of the parties was such that of a relationship of trust and confidence existed between Westin and Defendants.  Based on the foregoing, Defendants were fiduciaries with respect to Westin and were obligated to provide him undivided loyalty, due diligence and reasonable care, full disclosure of any conflicts of interest, and to act in such a manner to put his interests before their own.

44.     Defendants breached their fiduciary duty owed to Westin in the manner described above including by representing to him that the Drakefords' loan was for business purposes only, concealing from him information which they knew or should have known would result in a trier of fact concluding the loan was for consumer purposes and concealing their prior practice of violating federal and state lending laws.

45.     As a direct, proximate and foreseeable result of Defendants' breaches of fiduciary duty, Westin has been damaged in that he is jointly and severally liable on a judgment owed to the Drakefords in the amount of $738,466.12 and he has lost the interest that he would have earned on the loan had it been made for the business purposes in the manner represented to him.

46.     Defendants' acts were willful, wanton, malicious, oppressive and were undertaken with the intent to defraud and, therefore, Westin is entitled to an award

1    of punitive damages.

2    **Fifth Claim for Relief for Violation of California Unfair Business Practices Act**

3    **(California Business and Professional Code §17200 et. Seq)**

4    **(Against Both Defendants)**

5    47.    Westin repeats and repleads the allegations contained in paragraphs

6    through 46 above as though set forth in full herein.

7    48.    At all times material to this action, Defendants have repeatedly violated

8    California's Unfair Practices Act by engaging in the unlawful, unfair and deceptive

9    business acts and practices described above.

10   49.    Defendants' deceptive business acts and practices, as fully outlined

11   above, were intentional, reckless, wanton, malicious and otherwise undertaken in

12   order to induce Westin to execute the Loan Service Agreement and ancillary

13   documents with Defendants, and to invest substantial money into the Drakefords'

14   loan.

15   50.    As a direct proximate and foreseeable result of Defendants' acts,

16   Westin is entitled to disgorgement, restitution and injunctive relief.

17   51.    As a direct, proximate and foreseeable result of Defendants' violation

18   of the Unfair Competition Law, Plaintiff has had to employ attorneys and incur

19   attorneys' fees for which it is entitled to reimbursement.

20   **Sixth Claim for Relief**

21   **(Negligence)**

22   **(Against Both Defendants)**

23   52.    Westin repeats and repleads the allegations contained in paragraphs

24   through 51 above as though set forth in full herein.

25   53.    For all the reasons alleged above, including but not limited to, their

26   acting as Westin's agent and broker in the Drakefords' loan transaction, Defendants

27   owed Westin a duty of care to perform in a reasonably prudent manner and to obey

28   all federal and state consumer lending laws.

COMPLAINT                                                                    - 14 -
CASE NO.: 3:22-cv-5984

54.     Defendants breached their duty of reasonable care for all the reasons alleged above, including but not limited to, failing to properly investigate the Drakefords' loan to ensure that it was being made for business purposes, failing to properly review, evaluate and communicate to Westin the Purpose of Loan document executed by the Drakefords stating that the loan would be used to pay credit cards, landscaping and home improvements and failing to abide by the consumer lending laws.

55.     As a direct, proximate and foreseeable result of Defendants' breaches of duty, Westin has been damaged in that he is jointly and severally liable on a judgment owed to the Drakefords in the amount of $738,466.12 and he has lost the interest that he would have earned on the loan had it been made for the business purposes in the manner represented to him.

**Seventh Claim for Relief**

**(Equitable Indemnity)**

**(Against Both Defendants)**

56.     Westin repeats and repleads the allegations contained in paragraphs through 55 above as though set forth in full herein.

57.     For all of the reasons alleged above, including not limited to Defendants' breaches of fiduciary duty and their direct violations of the Federal Truth and Lending Act, the Real Estate Settlement Procedures Act and the Rosenthal Fair Debt Collection Practices Act, a judgment was entered jointly and severally against Westin, Mr. and Mrs. Williams and Defendants.  All of the wrongful acts on which the violation of the above lending laws was found were committed entirely by Defendants.  Westin's liability for the violations was entirely vicarious in that the wrongdoing was committed by Defendants in their capacity as his agent and for which sole reason he was held legally accountable.

58.     As a result of the wrongful acts committed by Defendants, Westin is

1  jointly and severally liable to the Drakefords on a judgment in the amount of

2  $738,466.12 which in equity and good conscience ought to be satisfied entirely by

3  Defendants, the parties who are responsible for the judgment having been entered

4  against him.

5  **Eighth Claim for Relief**

6  **(Penal Code section 496 (c))**

7  **(Against Both Defendants)**

8      59.    Westin repeats and repleads the allegations contained in paragraphs

9  through 58 above as though set forth in full herein.

10      60.    As alleged above, Defendants induced Westin to loan $100,000 to the

11  Drakefords on the false pretense that the loan was going to be used for business

12  purposes.  Defendants purpose in making these false pretenses was to secure the

13  financial benefits to themselves of the Loan Service Agreement.

14      61.    Pursuant to California Penal Code section 496 (a) receiving property

15  "that has been obtained in any manner constituting theft" is a criminal offense

16  punishable by imprisonment.  Pursuant to California law, procuring a loan by false

17  pretenses constitutes a violation of Section 496 (a). Pursuant to Section 496 (c), any

18  person that violates Section 496 (a) is liable for three times the actual damages as

19  well as attorney's fees.

20      62.    Defendants conduct alleged above constitutes a violation of Penal Code

21  section 496 (a) entitling Westin to the relief provided by Section 496 (c) including

22  treble damages and reasonable attorney's fees.

23  **Ninth Claim for Relief**

24  **(Declaratory Judgment)**

25  **(Against Both Defendants)**

26      63.    Plaintiff repeats and repleads the allegations contained in paragraphs 1

27  through 62 above as though set forth in full herein.

28      64.    An actual and immediate controversy exists between Westin and

Defendants arising out of their rights and duties under the Loan Service Agreement and the Judgment entered in the matter entitled *Drakeford et al v. Capital Benefit, Inc.*, et al, Case No. 20-cv-004161("the Judgment') in that Westin contends that: (a) the Loan Service Agreement was induced by fraud; that the limitations on liability, exculpatory and dispute resolution provisions of the Loan Service Agreement are unconscionable and/or unenforceable; and that Defendants are responsible for satisfying the Judgment without any contribution from Westin.  Westin is informed and believes, and thereon alleges, that Defendants dispute each of these contentions.

65.     Accordingly, Westin seeks a judicial declaration of the parties' rights and obligations under the Loan Service Agreement and the Judgment.

The foregoing is a matter within the subject matter jurisdiction of this Court.

**WHEREFORE**, Plaintiff Richard A. Westin prays for judgment as follows:

### AS TO THE FIRST CLAIM FOR RELIEF

1.     For damages in an amount subject to proof at trial but not less than $738,466.12.

2.     For prejudgment interest;

3.     For punitive damages in an amount subject to proof at trial;

### AS TO THE SECOND, THIRD, FOURTH, SIXTH AND SEVENTH CLAIMS FOR RELIEF

1.     For damages in an amount subject to proof at trial but not less than $738,466.12.

2.     For prejudgment interest;

### AS TO THE FIFTH CLAIM FOR RELIEF

1.     For disengagement of profits and restitution in an amount subject to proof but in excess of $75,000.00;

2.     For injunctive relief barring Defendants from engaging in unlawful, unfair and fraudulent practices in connection with their loan brokerage operations;

3.     For reasonable attorney's fees; and

4.    For prejudgment interests;

### AS TO THE EIGHTH CAUSE OF ACTION

1.    For damages in an amount subject to proof at trial but not less than $738,466.12.

2.    For treble said amount;

3.    For reasonable attorney's fees;

### AS TO THE NINTH CAUSE OF ACTION

1.    For a judicial declaration that: (a) the Loan Service Agreement was procured by fraud; that the limitation on liability, exculpatory and dispute resolution provisions of the Loan Service Agreement are unconscionable and/or unenforceable; and that Defendants are responsible for satisfying the Judgment without any contribution from Westin.

### AS TO ALL CLAIMS FOR RELIEF

1.    For costs of suit; and

2.    For such other and further relief as the Court may deem just and equitable.


DATED:  October 11, 2022          Respectfully submitted,

KILPATRICK TOWNSEND & STOCKTON LLP


By: */s/Emil W. Herich*
        EMIL W. HERICH

*Attorneys for Plaintiff*

1

**DEMAND FOR JURY TRIAL**

2      Plaintiff hereby demands a trial by jury of those matters so properly tried.

3

4    DATED: October 11, 2022         Respectfully submitted,

5                                     KILPATRICK TOWNSEND & STOCKTON
                                      LLP
6

7                                     By: */s/Emil W. Herich*
8                                         EMIL W. HERICH

9                                     *Attorneys for Plaintiff*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28